## SUPREME COURT.

GEORGE W. BERGEN and another, as trustees, &c., agt.
CATHARINE A. VALENTINE *et al.*

*Will — Construction of — Life tenant — Remaindermen — Loss, if any, for premiums paid on purchase of bonds, the interest of which, by terms of will, to go to the widow during her life, and principal sum after death to be paid over to a son and grandson in equal shares, by whom to be borne.*

A testator by his will directed his executors to invest $100,000 in bonds, stock or public securities issued by the United States, or by certain cities or counties, particularly limited by him, and to keep the same so invested during the life of his wife, to whom the interest or income thereof was to be paid semi-annually during her life. Upon the death of his widow, the testator provided that the sum directed to be invested should be paid over, the one-half thereof to the testator's son, and the other half to the testator's grandson. The executors invested the sum in United States four and one-half per cent registered government bonds due in 1891, at an average premium of three and eleven-sixty-fourths per cent, so that the par value of the bonds purchased amounts to the sum of $96,700, the balance, $3,000 and upwards, having been applied to the payment of the premium which the bonds bore:

*Held,* that the ultimate loss, if any, for premiums paid should fall on the remaindermen.

*Special Term, May,* 1882.

ACTION for construction of a will.

The will of Brewster Valentine, deceased, directed his executors, the plaintiffs, "to invest the sum of $100,000 * * * in bonds, stocks or public securities either of the United States of America, the city, county or state of New York, the county of Kings or city of Brooklyn," and pay the interest thereon to his wife, the defendant, Catharine A. Valentine, for life; and upon her death, the testator gives "the one equal half part of said sum of $100,000," to his son, the defendant, Ludlow W. Valentine, and "the remaining equal half part of said sum of $100,000," to his grandson, the defendant, Wm. B. Valentine.

Pursuant thereto, the plaintiffs, in 1878, invested the sum in four and one-half per cent United States registered government bonds, due in 1891, for which they paid a premium of $3,250 and upwards, so that the face value of the bonds amounts to $96,700.

There being a conflict of opinion as to who should bear the ultimate loss of this premium, this action was brought.

*Horace Secor, Jr.* (*Sandford & Secor*), for plaintiffs.

*Osborn E. Bright* (*Robinson, Scribner & Bright*), for defendant Catharine A. Valentine. The life tenant loses the interest on the amount paid for premium, and the remaindermen must suffer the loss of the premium (*Turner agt. Newport*, 2 *Phill. Ch.*, 14; *Cox* agt. *Cox*, *L. R.*, 8 *Eq.*, 343; *Plympton* agt. *Boston Dispensary*, 106 *Mass.*, 544; *Gunning* agt. *Carman*, 3 *Redf.*, 69; *Gillespie* agt. *Brooks*, 2 *Redf.*, 349, 364; *Dewitt* agt. *Cooper*, 18 *Hun*, 67, 69; *In re Pollock*, 3 *Redf.*, 100; *Goldsmith* agt. *Swift*, 25 *Hun*, 201; *In re Staples Settlement*, 13 *Jur.*, 273; *Brown* agt. *Brown*, 41 *N. Y.*, 507).

*Andrew Fuller*, for defendant Wm. B. Valentine.

*John Mackay*, guardian *ad litem*, for defendant Ludlow W. Valentine, an infant. The facts herein are concisely set out in the pleadings. The decision of CALVIN, S., *In re Pollock* (3 *Redf.*, 100), to the effect that the loss of premiums should fall on the remaindermen was not followed by LEARNED, J., in *Farwell* agt. *Tweddle* (10 *Abb. N. C.*, 94), whose attention was directed to the former decision as will appear from plaintiffs' points. Although the decision of CALVIN, S., has the force of an adjudication, an examination of the opinion shows so summary a disposition of the question as to create a suspicion as to the amount of attention given to it, while the opinion of LEARNED, J., although *obiter*, shows a careful and thorough consideration

Bergen agt. Valentine *et al.*

of the question. It is only fair and equitable that in this case the life tenant should make up the loss of premiums. The plaintiffs could have bought four per cent bonds at a premium of only one-half per cent, but the four and one-half per cent bonds cost a premium of three and eleven sixty-fourths per cent, so that while the four per cent bonds would only have cost $500, the four and one-half per cent bonds cost $3,277.50, a difference of $2,777.50. If the four per cents had been purchased there would be $99,500 represented in the par value, or value at the time of maturity of the bonds, and this would produce an income of $3,980. But the four and one-half per cents which were purchased represent $96,700, par value, and produce an income of $4,351.50, making a difference in the annual income of $371.50. It is true that so far as the trustees are concerned they had a discretionary power as to what particular bonds they should purchase, but as between the life tenant and the remaindermen is it just that an additional premium of $2,777.50 should be paid and the loss borne by the remaindermen so that the life tenant can realize an additional annual income of $371.50? Under the decision of *Farwell* agt. *Tweddle* the life tenant should sustain the loss of the whole premium; but inasmuch as in the present case no bonds could have been purchased for less than one-half per cent premium, or $500, we insist that the life tenant shall at least make up the difference between $500 and $3,277.50, viz., $2,777.50. The life tenant can make up the loss of the entire premium and still profit by the investment in the four and one-half per cent bonds. Thus the four and one-half per cents have thirteen years to run from the time of their purchase at a premium of $3,277.50. If one-thirteenth of this amount were deducted from the income every year, viz., one-thirteenth of $3,277.50, or $252.11, the life tenant would still have an income of $4,099.39, whereas the four per cents would only produce $3,980, making an annual balance in favor of the life tenant of $119.39 after deducting the yearly quota for premium, and besides the

life tenant would be entitled to receive the interest on the amount laid aside to meet the loss of premium at the maturity of the bonds. We have thus far discussed the question on general principles, but we think that from the language of the will itself, the loss will have to be borne by the life tenant. It will be observed that the will provides that the plaintiffs shall "collect the interest and income thereof, and pay over the same" to the life tenant; and also, on the death of the life tenant, the testator gives to each of the remaindermen "the one equal half part of said sum of one hundred thousand dollars, directed to be invested as aforesaid." Can anything be clearer than that the testator intended and expected that the *corpus* of the fund should be preserved intact? It may be claimed on behalf of the life tenant, that the provision to collect the interest and pay the same over to the life tenant, shows it to have been the intention of the testator that the life tenant should receive the entire income without any deductions whatever. If the testator had used the words "net income," there can probably be no doubt but that by the terms of the will the loss of premiums would fall on the life tenant (*See Burleigh* agt. *Center*, 9 *J. & S.*, 441). But we think the intention is shown without the use of the word net. By net income is meant that which is left after deducting the ordinary charges incident to the custody and management of the trust estate. Where the income of property is devised for life, as in the present case, all ordinary charges, such as commissions, &c., must be paid out of the income (*Pinckney* agt. *Pinckney*, 1 *Brad.*, 269; *Hepburn* agt. *Hepburn*, 2 *id.*, 74; *Griswold* agt. *Griswold*, 4 *id.*, 216; *see, also, Parkinson* agt. *Parkinson*, 2 *id.*, 77; *Booth* agt. *Ammerman*, 4 *id.*, 129). So that the use of the word net by the testator would have meant the same thing as the law provides without its use, and the express disposition of "said sum of one hundred thousand dollars" in remainder, shows that the *corpus* was intended to be kept intact. The argument and opinion in the case of *Burleigh* agt. *Center* (*supra*) are

applicable. In that case the trustees were to pay the net income to one for life, and upon her decease to convey the whole trust property according to the terms of the deed, and a sum of money having been expended by the trustees for legal services in the recovery of a portion of the trust property, it was held that the expenditure was chargeable to the income, not to the *corpus* of the trust fund; because the trust deed showed it to be the intention to keep the *corpus* intact and unimpaired. The question may be viewed in still another light, which would result in requiring the loss to be made up from the income. When a person buys bonds at a premium, the rate of interest which the bonds provide for cannot be said to be the interest or income received on the investment. When the bonds mature, the loss of premium will ensue, and investors always take that factor into consideration by allowing for its eventual loss in computing the amount of interest received. If bonds drawing four per cent interest are purchased for less than par, it is evident that the purchaser is getting more than four per cent interest; and so, if purchased at a premium, he is getting less than four per cent interest. It is insisted that the most elementary principles of equity and rules of construction require that this premium should be made up out of the income. If the court decide otherwise, it is respectfully requested, in view of the importance of the question, and doubt surrounding it, that an appeal be directed to be taken by the undersigned on behalf of the infant defendant.

VAN VORST, *J.*— By his will, the testator, Brewster Valentine, directed his executors to invest $100,000 in bonds, stocks or public securities issued by the United States, or by certain cities or counties, particularly limited by him, and to keep the same so invested, during the life of his wife, Catharine A. Valentine, to whom the interest or income thereof was to be paid semi-annually during her life.

Upon the death of his widow, the testator provided that

the sum directed to be invested should be paid over, the one-half thereof to the testator's son, Ludlow W. Valentine, and the other half to the testator's grandson, William B. Valentine.

The executors invested the sum in United States four and one-half per cent registered government bonds, due in 1891, at an average premium of three and eleven-sixty-fourth per cent, so that the par value of the bonds purchased amounts to the sum of $96,700, the balance, $3,000 and upwards, having been applied to the payment of the premium which the bonds bore.

The substantial question presented by the complaint in this action for determination is, upon whom the ultimate loss for premiums paid shall fall, whether on the life tenant or the remaindermen.

The idea of a loss in the end is, however, purely speculative, and rests upon the assumption that the face only of the bonds will be realized. But the bonds at the present time have a premium quite beyond that paid, and should the trust close by the death of the tenant for life some time before the maturity of the bonds, it is not clear but what a profit may yet be realized, instead of a loss suffered, by the remaindermen. For any accretion in that way gained, would go with the principal to those to whom the fund was payable.

But in the event that the funds are held until their maturity, it is not likely that anything more than the principal sum of $96,700 will be received for distribution. In cases of this character, it is equitable that the loss, if any, in this manner sustained, should be borne equally, as nearly as may be, by the life tenant and the remaindermen.

The testator undoubtedly intended that his widow should realize the full amount of income which should accrue on such amount of United States, or other specified securities, as $100,000 should purchase, at the rate existing when the investment was directed to be made.

And in that view, the amount to be distributed at the death of his wife, would be the amount received as the principal of the bonds more or less.

It is quite clear that the widow, so long as the present investment shall continue, will not realize the interest on $100,000, but that is a loss growing out of the investment which was directed to be made. And in like manner, if nothing more than the face of the bond is realized upon the death of the widow, the loss of principal must fall upon the remaindermen.

I can see no equitable ground for imposing upon the widow any loss in addition to what she must sustain during her life growing out of the fact that the *corpus* of the fund has been, in the way above mentioned, diminished.

She is entitled to the whole income for life, without depletion, whatever it may prove.

Nor can the remaindermen now equitably demand that any encroachment shall be made upon the income to make up what has been paid out of the principal for premiums.

What has been done and what is to be borne by the parties, as above indicated, of themselves adjust the loss, if any, in proper proportions. *Turner* agt. *Newport* (2 *Phil.*, 14); *Cox* agt. *Cox* (*L. R.*, 8 *Eq.*, 343) are cases which announce principles in harmony with what is above expressed. *Matter of Pollock* (3 *Red. Sur. R.*, 100) is in the same direction.

I am referred to the case of *Farwell* agt. *Tweddle* (10 *Abb. N. C.*, 94) as advancing a contrary view.

The condition of that case is quite different from the one under consideration. The trust in that case was substantially closed, at least in so far as the trustee was concerned, and the principal of the bonds had been received.

There the exact amount of the loss of principal was ascertained, but as far as the facts were concerned it does not represent the condition of this trust.

Here the executors were bound by the terms of the will to invest the fund in a certain security, which they have done, and the result which follows must be assumed to have been within the contemplation of the creator of the trust, and that it was not his intention that the widow and remaindermen should receive, the one less and the other more than he had

given, and that the loss, if any, should be borne by the parties in the way above indicated.

The case put by the learned judge, in *Farwell* agt. *Tweddle* (*page* 95), does not embrace the incidents existing here which I regard as quite material.

The conclusion reached is that Catharine A. Valentine is entitled to the entire interest received on such bonds, and that the plaintiffs, the trustees, would not be justified in deducting anything therefrom to make up what has been paid by way of premium in the purchase of the bonds, and judgment is directed accordingly.

Findings of fact, conclusions of law and judgment in pursuance of the above must be prepared by the plaintiffs' attorneys and a copy served on the attorneys for the other parties with a notice of settlement of two days.