(Surrogate's Court, Westchester County. June, 1898.)

TRUSTS—LOSSES CHARGEABLE TO PRINCIPAL.

    The loss or gain in the value of securities purchased by a trustee, in the exercise of his sound discretion, should go to the diminution or accretion, as the case may be, of the capital, and not of the income, unless a contrary intention must be implied from the trust instrument.

In the matter of the final judicial settlement of the accounts of the New York Life Insurance & Trust Company, administrator with the will annexed of Francis W. Lasak, deceased. Exceptions by the life beneficiary to the finding of the referee, approving a transfer from income to principal to make good money paid for premiums on government bonds. Sustained.

Emmet & Robinson, for petitioner.

G. G. & F. Reynolds, for contestant.

SILKMAN, S. The life beneficiary excepts to that finding of the referee which approves of the transfer from income to principal account of $150 per year, aggregating $1,350, to make good the principal moneys used in the payment of a premium upon the purchase of United States government bonds, the purchase of which was expressly authorized by the testator. To formulate a general rule to be applied in cases of this character, which would be in its operation equitable and just, both to the life tenant and remainder-men, is well nigh impossible. Courts have endeavored to find something in slight variations of the usual verbiage used to create a trust to show an intention on the part of the trust-maker, either to the benefit of the life beneficiary, or of the remainder-men; but I can find no case, except it be viewed through the powerful, but unsatisfactory, canons of legal construction, which to my mind evidences any contemplation on the part of the trust-maker at the time of making the trust instrument of such a situation as is now under consideration. We may assume that, if the trust-maker's attention had been called to the possibility of the necessity of paying premiums to secure good investments, he would have by a few simple words placed his intention beyond the need of judicial construction.

Although the testator expressly provided for the investment in government bonds, I assume that he never had in mind the payment of premiums, about which question now arises. We must, therefore, look further, I may say, deeper, than the language employed, for a principle that will guide us to a correct interpretation of the unexpressed intention of the trust-maker. Trusts where the rents and profits of property are to be applied to the use of a designated beneficiary are created usually for the benefit of some person who has stood in a relation of dependence upon, or whose welfare and support are of particular moment to, the trust-maker. The life beneficiary is the one whose concern is uppermost in his mind, and his interest in the remainder-men being only incidental and subordinate thereto. We may assume, therefore, that where the life beneficiary

has stood in a close, dependent, and affectionate relation to the trust-maker, such as parent and child, or husband and wife, the dominant intention in creating the trust is to provide a suitable and proper support for those to whom his affection runs, rather than the preservation or exaggeration of the capital for the benefit of the remainder-men; that, as between their respective interests, the life tenant should not be the one to suffer. So, in solving the question presented, we must have this principle in mind.

The investment by trustees in high-class securities, such as United States government bonds which ordinarily command a premium, is primarily for the benefit of the remainder-men. The better the security, the lower the interest and the more certain the preservation of the capital. The premium may be said to be partly in the nature of an insurance of the integrity of the capital, and is not necessarily indicative of the prevailing rate of interest. Although the securities for which a premium is paid may have a definite period to run, and at maturity the premium must have disappeared, it is not to be taken for granted that such premium is gradually and evenly disappearing, nor that the securities will be necessarily carried until maturity. It may and does frequently happen with such securities that, as the rates of interest fall and money becomes cheaper, the premium grows instead of diminishes, and it may be that the trust will come to an end when the premium is actually greater than when the securities were bought, in which case the remainder-men would reap the benefit. In re Gerry, 103 N. Y. 445, 9 N. E. 235. In that case there was a profit of $23,000, due to the appreciation in the value of securities, a portion of which were United States government bonds, and the court held that the increase was an accretion to the capital and belonged to the remainder-men. Having in mind the trust-maker's presumed intention, we should not give to the remainder-men all the benefits, and not permit them to suffer some of the risk of depreciation. Judge Van Vorst, in the case of Bergen v. Valentine, 63 How. Prac. 221, well says:

"The idea of a loss in the end is, however, purely speculative, and rests upon the assumption that the face only of the bonds will be realized. But the bonds at the present time have a premium quite beyond that paid, and, should the trust close by the death of the tenant for life some time before the maturity of the bonds, it is not clear but what a profit may yet be realized, instead of a loss suffered, by the remainder-men; for any accretion in that way gained would go, with the principal, to those to whom the fund was payable."

In the case of McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, the court gave some weight to the direction to the trustees to pay over the "full income." Judge O'Brien says:

"It is said that the intention of the testatrix, with respect to the amounts which the beneficiaries were to receive as income from the earnings of the fund and expressed by the words 'full income,' was a question of fact, to be determined, not only from the language employed, but from the conditions and relations of the parties and all the circumstances of the case. Whether that is so or not, we think that when the testatrix directed that her grandchildren should receive the whole income of these securities she must have intended the full interest payable thereon, without diminution by reserving a considerable portion of it for the purpose of meeting any deprecia-

tion in the market value of the bonds due to the fact that they were approaching maturity. Whatever meaning the words 'full income' may convey to the mind of a trained expert in finance, it cannot, we think, be doubted that the common mind must always understand such a direction in a will as meaning the annual interest upon securities. To give to her words now an artificial meaning, based even upon scientific theories, would be to subvert her intentions, and to take from the objects of her bounty a considerable portion of the money which she intended that they should receive. The thought that was in the mind of the testatrix with respect to her grandchildren, and the provision necessary for their support and maintenance, should be carried out. There seems to be no reason to believe that she intended that they should receive any less than the interest."

I cannot distinguish the McLouth Case from the one before us. There, the testatrix was providing for her grandchildren; here, the testator was providing for his children. Judge O'Brien in holding that the diminution in the value of the bonds due to the falling premium should be borne by the remainder-men places the decision both upon the ground of the language of the will and the relationship of the parties. The latter ground seems to me to be the safer and sounder reason. Unless the language of the will before us can be fairly distinguished from that in the McLouth Case, it is decisive of the question here. Judge O'Brien states the rule clearly and forcibly, as follows:

"But, quite apart from these considerations, it is said that, upon principle and the great weight of authority, the decision of the learned referee was right. Since the investment must be unquestionably safe in order to preserve the capital as well as to secure income, the premium is paid for the benefit of the remainder-man as well as the life tenant. The absolute security of government bonds, both to the life tenant and the remainder-man, must always be kept in view. They may be purchased at a premium and sold at a still higher one, in which case, if there is a deduction made from the interest and added to the principal to balance the premium, the remainder-man will be doubly benefited. Some investments will increase, while others will diminish, in value. When all things are considered, the better rule, it is urged, is to allow these matters to balance themselves, as, on the whole, they are quite likely to in the end. The arguments against charging the life tenant in such cases with the premiums have thus been elaborated at great length in many of the adjudged cases."

The use of the word "full," as qualifying the word "income," I do not think is entitled to controlling weight, and I do not think that the decision of the court of appeals turned upon the use of that word.

It may be argued that in case large premiums be paid by trustees in the purchase of securities it would, under the rule of construction I have followed, work great injustice to the remainder-man, and perhaps cause considerable diminution of the principal of the trust estate; but, on the other hand, great gains may be made by the enhancement in the value of the securities. To make a rule that would do exact justice in each particular case is impossible, but some rule is necessary for the guidance of trustees, and I think it a safe rule to adopt; and, although based somewhat upon necessity and not altogether upon equity, it is one which could not operate to the disadvantage of the primary object of the trust-maker's bounty, and that is that the loss or gain in the value of securities purchased by the trustee in the exercise of his sound discretion should go to the

diminution or accretion of capital, as the case may be, unless a contrary intention is expressed in, or necessarily implied from, the trust instrument, and this discretion of the trustee in the matter of investments should not be interfered with, unless it appear to have been abused or exercised with partiality in favor of either the life tenant or remainder-man. Irrespective of the reasons that I have given and which go to the merits of the question, there is a fatal objection to the referee's finding. Neither the account nor the record contains any evidence upon which the transfer of any sum from income to capital account can be predicated. I have looked in vain for any evidence of the due date of the United States government bonds.

The exception to the referee's report discussed is sustained, but in all other respects the report is confirmed. Decreed accordingly.