THE NEW YORK LIFE INSURANCE AND TRUST COMPANY, as Substituted Trustee under the Will of JAMES BAKER, Deceased, Appellant, *v.* WILLIAM J. BAKER, WILLIAM VER PLANCK BAKER and VIOLET BAKER, Respondents.

*Trust fund — amount to be retained by the trustee from the income of securities purchased at a premium — estoppel of beneficiary — when a trustee is chargeable with knowledge of his predecessor's investments.*

It is the duty of a trustee who has invested the trust fund in bonds purchased at a premium to make such deductions from the income, payable to the life beneficiary, as will suffice to make the principal of the trust fund whole when the bonds mature.

A table of computation may properly be referred to for the purpose of ascertaining the amount of the deductions to be made or the premium paid may be divided by the number of interest payments which will be made up to the maturity of the bonds and the quotient be deducted from each interest payment and held as principal. Fluctuations in the market value of the bonds after their purchase have no bearing upon the amount of such deductions.

Where the life beneficiary has insisted upon his right to receive the entire annual income of such bonds, he will not be permitted to assert that the conduct of the trustee in paying the same to him was illegal; and where the trustee, upon an accounting by him, has been charged with the amount of the overpayments made to the life beneficiary, the latter is not entitled to the income arising from the amount thus restored to the estate, but the trustee may retain such sum during the life of the beneficiary.

What recitals in an order appointing a substituted trustee are sufficient to charge him with knowledge that the securities in which the principal of the estate was invested had been purchased at a premium by his predecessor, considered.

APPEAL by the plaintiff, The New York Life Insurance and Trust Company, as substituted trustee under the will of James Baker, deceased, from so much of a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 24th day of March, 1898, upon the report of a referee, as adjudges that the plaintiff is chargeable with any amount whatever in addition to the securities and funds shown to be in its hands by its account as filed, and also from so much thereof as adjudges that the life tenant, William J. Baker, cannot be adjudged liable to refund any overpayments of income which should have been set apart by plaintiff and added to principal, and

that plaintiff cannot deduct from payments of income hereafter to be made to William J. Baker any overpayment heretofore made to him, and particularly from such part of said judgment as adjudges : "That in addition to the securities and funds shown to be in the hands of the plaintiff by its account as filed, it should be charged with the sum of $3,764.75, the amount necessary to make up the deficiency in the *corpus* of the estate caused by the purchase at a premium of the four and one-half per cent bonds, and with the further sum of $1,496, the amount necessary to make up the deficiency in the *corpus* of the estate caused by the shrinkage in the premium on the four per cent bonds; that the account of the plaintiff as to the principal of the estate should be settled as follows :

"The plaintiff should be charged with :

| | | |
|---|--:|--:|
| "Cash received from its predecessor | $5,026.86 | |
| "Amount received from 4½ per cent bonds. | 31,000 00 | |
| "Amount received from 4 per cent bonds. | 54,550 00 | |
| "Amount transferred from income to principal | 224 24 | |
| "Amount wrongfully paid to life tenant from interest on 4½ per cent bonds... | 3,764 75 | |
| "Amount wrongfully paid life tenant from 4 per cent bonds | 1,496 00 | |
| | | $96,061 85 |
| "The plaintiff should be credited with : | | |
| "Payments set out in the account amounting to | $2,719 25 | |
| "Loss on sale of bonds purchased by plaintiff | 122 76 | |
| | | 2,842 01 |
| "Leaving the balance with which the plaintiff should stand charged the sum of | | $93,219 84 |

"That the plaintiff now holds properly invested as part of the *corpus* of the trust fund a bond and mortgage of James P. Cahen for the sum of $8,500 — a bond and mortgage of Thomas E. Foran in the sum of $17,000 — a bond and mortgage of Robert Sandford in the sum of $60,000, and United States 4 per cent bonds of the par value of $1,650 for which the trustee rightly paid the sum of

$1,964.61, making in all the sum of $87,464.61 — and that the plaintiff should be charged in addition thereto on account of the *corpus* of the estate with the sum of $5,755.23; that as appears by the account the trustee has paid to the life tenant all the interest belonging to him. * * *

"That the life tenant, William J. Baker, cannot be adjudged liable to refund any income which has been paid to him, which income should have been set apart by plaintiff as a sinking fund to be added to principal, nor can plaintiff deduct such income from any payments of income hereafter to be made to him, on the ground that a finding that he is so liable, and that such deduction might be made, is not within the issues of this action."

This appeal was transferred from the first department to the second department.

*R. E. Robinson*, for the appellant.

*Rastus S. Ransom*, for guardian *ad litem*, respondent.

*Jesse Grant Roe*, for William J. Baker, life tenant, respondent.

CULLEN, J.:

This action is brought for a settlement of the accounts of the plaintiff as substituted trustee under the will of James Baker, deceased. The question involved in the case is as to the respective rights of life tenant and remaindermen in the interest coupons on government bonds, where the bonds are purchased at a premium. In 1881 and 1882 the plaintiff's predecessor invested $91,525 of the principal of the estate in $50,000 par value of four per cent government bonds, $31,000 of government four and one-half per cent bonds, paying a premium of $6,250 on the four per cents and $4,275 on the four and one-half per cents. The four and one-half per cent bonds were held by the plaintiff until their maturity on September 1, 1891, when they were paid. It sold the four per cent bonds in August, 1893, for the sum of $54,550. All the interest coupons that became payable on these bonds during the time they were held in the trust were paid over in full to the life tenant, William J. Baker. This resulted in impairing the capital or principal of the trust fund to the full extent of the premiums paid for the four and one-half per cent bonds, and to the difference between the premium at which the four per cent bonds were bought and

that at which they were sold. On the accounting the guardian *ad litem* for the infant remaindermen claimed that the plaintiff should be charged with the amount of this impairment. This claim the referee sustained to the extent of the deductions which he held the plaintiff should have made from the annual interest payments during its incumbency in the trust. For the deduction which the former trustee should have made, the plaintiff was held not liable. The referee was of opinion that, at each time the interest coupons were paid, a sufficient sum should have been deducted therefrom to make good, at the maturity of the bonds, the premium paid on their purchase.

Before discussing the main question involved in the case, it is necessary to dispose of the claim of the plaintiff, that it was not chargeable with knowledge that the bonds represented any greater investment of principal than their face amount. This claim cannot be sustained. The order by which plaintiff was appointed trustee recites that the former trustee had invested the sum of $91,525 of principal in certain securities then on hand which had cost that amount, and that he also had a certain sum in cash. The order then directed the former trustee to turn over to the plaintiff " the securities belonging to the principal of said fund, viz., fifty thousand dollars of United States four per cent registered bonds, and thirty-one thousand dollars of United States registered four and one-half per cent bonds." We think this was an explicit statement that $81,000 of bonds represented $91,525 of principal, and that, as to the payments made to the life tenant, the plaintiff stands in no better position than if it had made the investment in these bonds itself.

The question whether the premium paid on an investment in bonds should be charged to the principal fund, where the investment is made by the trustee, has never been determined by the Court of Appeals, while in the other courts of the State the decisions are conflicting. In *McLouth* v. *Hunt* (154 N. Y. 179) all the bonds, with the exception of a small amount, were investments made by the testator herself, and the will directed that the "full income" should be paid to the life tenants. At the time of the testator's decease these securities had a market value in excess of their face value. The court held that no diminution was to be made in the income of the life tenant to make good this excess or premium.

But the decision was placed on the intent of the testator as expressed by the will, and the general rule was not decided. The case differs in another respect also from the present one; the bonds were held by the testator at the time of her decease, and as in her hands the interest on the bonds would be considered as income, the same rule might be considered to apply when the bonds were held by her trustee. In two well-considered cases the Appellate Division of the first department has held that, where a trustee invests in bonds, paying a premium therefor, he must make such deduction from the interest as will suffice to make the principal whole when the bonds mature. (*New York Life Ins. & Trust Co.* v. *Kane*, 17 App. Div. 542; *Matter of Hoyt*, 27 id. 285.) The latter of these cases was decided since the decision of the Court of Appeals in the *McLouth* case. We can add little to the discussion of the question had by the learned court in the first department. We think their view clearly correct. Any other view would lead to the certain impairment of the principal of the trust, to protect the integrity of which has always been the cardinal rule of courts of equity.

Nor can there be any question of the mathematical correctness of the rule. If one buys a ten-year five per cent bond at one hundred and twenty, the true income or interest the bond pays is not four and one-sixth per cent on the amount invested, nor five per cent on the face of the bond, but two and seven-tenths per cent on the investment or three and twenty-four one-hundredths per cent on the face of the bond. The matter is one simply of arithmetical calculation, and tables are readily accessible showing the result of the computation. We may distrust our ability to make these computations accurately ourselves, but that is no reason against the use of such tables. We habitually use the life tables in determining the present value of a life estate or dower right, though we know that none of us could prepare those tables. There seems to be no less reason for our employing the table of computations refered to. There is, however, a simpler way of preserving the principal intact, the method adopted by the learned referee. He divided the premium paid for the bonds by the number of interest payments which would be made up to the maturity of the bonds, and held that the quotient should be deducted from each interest payment and held as principal. These deductions being principal, the life tenant would get

the benefit of any interest that they might earn. We do not see why this plan does not work equal justice between the parties. But even if it be the fact that both the tables and the plan of the referee involved some mathematical inaccuracies, either of them is far more certain than the mortality tables on the faith of which large sums of money are awarded by the courts.

In the cases in which a contrary view of this question is held, it is argued that the rule of which we have approved is inequitable, and reasons are given for that view. In *Bergen* v. *Valentine* (63 How. 221, 227) Judge VAN VORST said : " I can see no equitable ground for imposing upon the widow any loss in addition to what she must sustain during her life growing out of the fact that the *corpus* of the fund has been, in the way above mentioned (loss of premium paid for bonds) diminished. She is entitled to the whole income for life, without depletion, whatever it may prove." Undoubtedly the widow was entitled to the whole income for life, but the learned judge proceeds on a misconception of what the income really was. As already stated, the income on a thousand-dollar ten-year five per cent bond, bought at one hundred and twenty, is not fifty dollars, but thirty-two dollars and forty cents for the first year (diminishing in subsequent years), and the remaining seventeen dollars and sixty cents is only a return of principal. The real hardship, if any, that the widow suffered was the low rate of interest on investments that prevailed at the time ; and even as to this it is possible that borrowers may take a different view of the subject. The learned judge was also of opinion (p. 226) that : " The idea of a loss in the end is, however, purely speculative, and rests upon the assumption that the face only of the bonds will be realized. But the bonds at the present time have a premium quite beyond that paid, and should the trust close by the death of the tenant for life some time before the maturity of the bonds, it is not clear but what a profit may yet be realized, instead of a loss suffered by the remaindermen." It is entirely true that if the trust terminates before the bonds mature, the bonds might be sold at a greater premium than that which was paid on their orignal purchase. But that contingency does not affect the question before us, nor does it render the amount of deduction to be made from the apparent income or interest speculative. In the case of a bond purchased at par, the change in the

ruling rates of interest, or an appreciation or diminution in the character of the security, might change the market value of the bond. Such change of value is no doubt speculative, and the remainder-men would get the benefit of a rise in value, or suffer loss for a fall. With such rise or fall, the life tenant would not be charged nor benefited. But there is an intrinsic change in the value of a security for the payment of money, bought either at a premium or a discount, as it approaches maturity, which is perfectly susceptible of calculation, apart from the speculative change of market value to which we have referred. Thus the ten-year 5 per cent bond, bought at 120, if held until it has only five years to run, would at that time be worth to the holder somewhat less than 111 per cent; that is to say, two 5 per cent bonds, one payable in ten years, bought at 120, and one payable in five years, bought at 111, would each pay the purchaser the same rate of interest, to wit, $2\frac{7}{10}$. If the bond at that time should sell in the market for only 105, the life tenant should not be charged with all the deficiency; nor, on the other hand, if the bond sold at 115, should he make good only the difference between that price and 120. He should be charged the 9 per cent diminution of value from lapse of time, and the change other than that is simply enhancement or depreciation in the value of the security.

In *Matter of New York Life Ins. & Trust Co.* (24 Misc. Rep. 71, 73) the learned surrogate of Westchester county has held that the premium on bonds must be paid at the expense of the capital of the trust. He asserts that "the premium may be said to be partly in the nature of an insurance of the integrity of the capital, and is not necessarily indicative of the prevailing rate of interest." The premium on bonds does in a certain sense represent the safety of the security for their payment. But accurately it is the rate of interest that represents the character of the security. The better the security, the cheaper the borrower can borrow money. There are now outstanding several classes of government securities, some bearing three per cent interest, some four, some five, and a very few bearing six per cent. The security for the payment of these bonds is exactly the same — the faith of the government. But they sell at different prices; the threes at about one hundred and eight, the fours about one hundred and thirty. This difference in premium

certainly is not occasioned by any difference in the security, but proceeds solely from the rate of interest the bonds pay, and the length of time during which that interest will be paid. If we know that twenty-two per cent of the thirty per cent premium at which the fours sell is not a premium paid for the character of the security, how can we say that the other eight per cent is? It seems to us that the only proper way is to consider a bond, bought either at a premium or a discount, as paying a specific rate of interest on the investment. We believe this is the only way that large investors in bonds, like insurance companies, savings banks and trust companies, consider such investments. There may be slight differences in the desirability of one class of bonds over others, for special purposes or otherwise, that may in some degree modify their market price, but in the main the difference in the prices between the several classes of government bonds is exactly proportioned to the net return they will make to the investor. Is a trustee to be allowed in his discretion to invest the principal in four per cents at one hundred and thirty, and charge the premium to capital, instead of three per cents at one hundred and eight? If so, the income of the life tenant and the principal to be eventually enjoyed by the remaindermen will depend largely on the favor of the trustee. We think he should be allowed to invest in either, treating the true return in excess of principal as income, and no more.

We have devoted much time to the discussion of a proposition which, frankly, we think perfectly clear. Probably our labor has been unnecessary, but on account of the conflicting views that courts have taken of the question, we have thought it wise to state our position at length, even at the expense of prolixity.

We do not know that we correctly understand the claim of the counsel for the guardian *ad litem*, that, because the market value of the government bonds when transferred by the former trustee to the plaintiff had appreciated, the sinking fund to make good the premium at the time the bonds would mature should be proportionate to the enhanced value. As already stated, we do not see what the fluctuation in the market value of these bonds after their purchase has to do with the true income they return. That depends on the original capital invested at the time of their purchase. All we can say is that if counsel's argument is to prevail, it is very fortunate for

the life tenant that the market value of the bonds did not go higher. If it had gone high enough he would have had no income at all.

Though we agree with the learned referee in holding that the plaintiff should make good to the *corpus* of the trust the depletion for which it is responsible, by paying over the whole amount of the coupons collected to the life tenant, we think that the life tenant should not have the benefit of the restoration. He insisted, both before and since the commencement of the action, that he was entitled to the whole amount of the coupons. If he should receive the interest on the sum restored to the estate, he will have been paid twice. He should be estopped from asserting that the action of the trustee in the payments made to him was illegal. It is true that the life tenant of a trust fund cannot anticipate or assign his income, nor can he create any lien thereon. We have held in the case of *Spencer* v. *Spencer* (*ante*, p. 403), that a trustee, who for a long term of years paid to the life tenant the whole income, without deducting any commissions, could not make the commissions he had failed to retain, a charge on future income. But at the same time we said that we did not hold that no error of overpayment in the trustee's accounts could be corrected in his future dealings with the *cestui que trust*. In the present case, until the recent decisions in the Appellate Division of the first department, there was no authoritative determination by the courts on the question of income involved in this case. During the period of the plaintiff's trusteeship we think, probably, the weight of authority was in favor of the plaintiff's view as to the rights of the life tenant; at least the authorities were equally balanced. It, therefore, had some justification for its conduct, and it does not lie in the mouth of the life tenant to assert that its conduct was illegal. The judgment below should be modified by providing that, during the life of the defendant William J. Baker, the income on the amount of the capital charged to the plaintiff may be retained by it, and, as modified, affirmed.

The costs and allowances to counsel in this case exceed in the aggregate the sum of $6,400. This sum, which equals or exceeds the amount in controversy, is, in our opinion, grossly extravagant. No appeal, however, as to those allowances has been taken by any of the parties, and we are without power to act. We do, however,

indulge in the hope that the trustee will in the future make no errors in its accounts, for, if they are to be corrected by litigation as expensive as the present, the trust fund will be depleted more rapidly than by any charge for premium on bonds. All we can do is to direct that the modification and affirmance by this division of the court shall be without costs to any of the parties.*

All concurred.

Judgment modified in accordance with opinion, and, as modified, affirmed, without costs to either party as against the other.

---

*The method of the referee involves a slight error. The reservation of a uniform amount at each payment of the coupons is too great in the early years of the investment and too small in the later years. But if we assume that these reservations can be invested so as to produce the same interest as the original security, no injury to the life tenant would result from this method. The tables are claimed to be, and we suppose are, entirely accurate and involve no assumption of an interest rate. But in some respects they are inconvenient, for a new calculation must be made at the time of each interest payment. The rate of interest the investment pays remains constant, but the amount of the investment on which the interest is to be calculated diminishes by the amount of each reservation.