In the Matter of the Estate of JOHN N. GOLDING, Deceased.

Surrogate's Court, New York County, June 19, 1924.

**Executors and administrators — separation agreement between testator and wife and trust deed construed to require executor to pay deficiency in income from principal of estate — power in trust deed to sell not mandatory — wills — leasehold was part of property left in trust — beneficiaries not entitled to net rents received but only to income on value of leasehold — testator's daughter having attained age of majority according to laws of State of her residence, should be paid her share directly.**

The testator and his wife entered into a separation agreement providing for the payment of a stipulated sum in lieu of permanent alimony. This agreement was modified and a deed of trust of certain real property was made by the testator to secure the payment of the sum stipulated in the modified agreement. The deed of trust provided for the payment of a specified sum monthly during the life of the wife and that in case the income was not sufficient to meet the payments the testator would make up the deficiency. This the testator did during his lifetime. The trust deed and the separation agreements, read together, establish a contract creating a valid debt against the testator's estate and, therefore, the executor properly paid the deficiency from principal of the estate. The power of sale granted the trustee to make up any deficiency was not mandatory and he was not required to exercise it so long as the executor paid the deficiency.

The rents from a leasehold owned by the testator at the time of his death were properly accumulated for amortization purposes and the beneficiaries of a trust of which the leasehold was a part of the principal were not entitled to all the rents so collected but only to the income — five per cent per annum — on the fair appraised value of the leasehold at the time of the testator's death based on the actual rent collected.

The testator's daughter having attained the age of majority according to the laws of the State in which she has been residing since prior to the death of the testator, is entitled to have her distributive share paid to her directly.

PROCEEDING for an accounting involving construction of separation agreement, deed of trust, and trust provisions of the will.

O'BRIEN, S. This is an accounting proceeding in which several questions of construction arise. Testator died on August 10, 1919. He was survived by his widow, Mabel C. Golding, and three children, Robert N. Golding, John N. Golding, Jr., and Mabel Golding. His entire residuary estate was devised in trust, one-fourth for the benefit of each of his two sons, and one-half for the benefit of his daughter. The testator and his wife had been separated since 1908. On March 8, 1910, they entered into a separation agreement wherein the testator agreed to pay to his wife the sum of $1,000 monthly in lieu of permanent alimony. Some time later, Mrs. Golding having brought an action to recover

moneys due under said agreement, a new separation agreement
was entered into on March 19, 1915, wherein, in consideration
of the withdrawal of the action, the agreement of March 8, 1910,
was continued in effect, except that the amount to be paid monthly
in lieu of permanent alimony was fixed at $500 instead of $1,000.
The new agreement further provided that the alimony was to be
secured by a trust deed, which was executed simultaneously with
said agreement and made a part thereof.   Under this trust deed
there was conveyed to the trustee therein named certain premises
on the west side of Broadway, near Fifty-second street, and certain
lots in upper Manhattan, " to have and to hold   *   *   *.   in trust
nevertheless for and during the natural life of the said Mabel C.
Golding, one of the parties of the first part.   *   *   * "   Then
follow further provisions authorizing the trustee " to pay over the
net income thereof up to an amount not exceeding $6,000 in any
one year to the said Mabel C. Golding, wife of the said John N.
Golding, during her natural life, in monthly installments in accord-
ance with the provisions of an agreement bearing even date here-
with made between John N. Golding and the said Mabel C.
Golding; " that " whereas the present net income of the said prem-
ises is not sufficient to enable the trustee to pay therefrom to the
said Mabel C. Golding the sum of $500 in each month as herein-
before provided, the said John N. Golding hereby covenants and
agrees that within two days after demand   *   *   *   he will pay
to the said trustee such sum as shall be necessary to enable it with
the net income of the said premises then in its hands to make such
payments; " that in the event of default by said testator, after
notice, or otherwise at any time in its discretion, the trustee was
authorized and empowered to sell the said premises or any part
thereof and to hold the proceeds " in trust during the natural life
of the said Mabel C. Golding, to apply so much thereof as may be
necessary to pay the amounts in the payment of which the said
John N. Golding may have made or shall thereafter make default; "
that in the event there is a surplus of income over the $500 to be
paid, " all net income of the said trust estate for said year remaining
in the hands of said trustee shall be paid by it over to John N.
Golding, his heirs, executors, and administrators; " that in the
event of the death of testator's wife before their daughter, Mabel
Golding, has reached her majority on January 28, 1925, the income
of the trust was to be divided among the surviving children of the
parties until January 28, 1925, or the sooner death of the daughter,
" but the said John N. Golding   *   *   *   shall be under no
obligation after the death of the said Mabel C. Golding prior to said
28th day of January, 1925, to make good as hereinbefore provided

or otherwise any deficiency between the net income of the said trust estate and the annual sum of six thousand dollars;" that in the event testator died before his daughter Mabel's majority, " then upon the termination of the trust hereby provided " the principal of the fund was to vest in his children; that if both testator and his wife survived until their daughter Mabel became of age, " then upon the subsequent termination of the trust hereby created the principal of the said trust estate shall revert to and become the sole property of the said John N. Golding, and the said trustee is hereby authorized, empowered and directed to convey, assign, transfer and pay over the same to him, his heirs, executors, administrators or assigns."

Testator's widow died on March 31, 1923. During his lifetime testator paid all deficiencies in income as required by the agreement and trust deed. From his death on August 10, 1919, until the death of testator's wife, the executor paid all deficiencies during that period. The question now arises whether such payments, made by the executor to the widow of the testator after his death, should be charged to principal or income of testator's estate. The trust deed was executed simultaneously with the separation agreement of February 19, 1915, and made a part thereof. They should, therefore, be read together to ascertain the exact intention of the parties. While the separation agreement provides for monthly payments in lieu of permanent alimony, the trust deed provides for these payments *during her natural life*. The other provisions of the trust deed clearly evince an intention on testator's part that the trust estate and the payments thereunder were to continue for the benefit of his wife even after his death. The law is settled that an obligation to pay alimony to a wife ceases upon the death of the husband, but the parties may agree that an allowance be made to the wife which will bind the husband's estate after his death. (*Wilson* v. *Hinman*, 182 N. Y. 408, 414; *Barnes* v. *Klug*, 129 App. Div. 192, 193; *Matter of Hoffman's Estate*, 108 Misc. 612.) In *Barnes* v. *Klug* (*supra*, 195) it was held: " It is true that a husband cannot be compelled to support his wife except during his lifetime. Where a decree of absolute divorce or of separation is granted against him by a court, alimony will cease on his death, notwithstanding the decree should provide that he pay the stipulated alimony during the life of the wife and direct that he should give security to insure its payment. * * * But he can voluntarily make such provision for support to continue after his death by contract or otherwise if he sees fit so to do. * * * Nor was it necessary in express terms to state in the contract that it should be binding on his legal representativ: .

There is nothing in the language of the contract showing that he intended to bind only himself. It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but their personal representatives. (*Kernochan* v. *Murray*, 111 N. Y. 306.)"

Reading the agreements of March 8, 1910, February 19, 1915, and the trust deed together, a contract was established which created a valid debt against the testator's estate, and the payments made by the executor are properly chargeable, therefore, to principal. As to the executor's contention that the trustee under the trust deed should have sold the trust property and made good the deficiencies to the wife from the proceeds thereof, the trust deed provided as follows: "The power of sale hereinbefore conferred upon the trustee for the purpose of making good from the proceeds of the said trust estate any sums in the payment of which the said John N. Golding shall have made or may hereafter make default as hereinafter provided *may* likewise be exercised by the said trustee *subsequent to the death* during the continuance of the trust hereinabove created of the said John N. Golding in case the net income of the said premises shall at any time be insufficient to enable the said trustee to pay to said Mabel C. Golding during her life the sum of $500 in each month. * * *"

There was no mandatory direction to sell such property after the testator's death. So long as these payments were made by the executor, the trustee was under no compulsion to sell the property covered by the trust deed. There is another question to be determined in this proceeding. At the time of the making of his will, testator was the owner of the leasehold of premises No. 545 Fifth avenue, Manhattan, New York city. This leasehold expires on December 14, 1924, and, at the time of his death, had five years and four months to run. It was appraised at $60,919.88. *This leasehold forms part of the corpus of the trusts created under testator's will.* The executor and trustee has collected and accumulated the net rents of said leasehold in order to amortize same. The total sum thus far collected is $33,767.30. This leasehold was the only rent-producing property that the testator owned. He owned no real property. The question to be determined is whether the leasehold should have been sold by the executor and trustee and the proceeds invested in interest-bearing securities, or the rents accumulated for the purpose of amortization. The life beneficiaries claim to be entitled to the net rents of the leasehold up to the time of its expiration. This position is untenable. The general rule is that where trustees or executors find a portion of the estate invested in what are termed "wasting" securities, they should

Misc. 821]     Surrogate's Court, New York County, June, 1924.

pay to the life beneficiary only so much of the income as represents a fair return upon the capital value, accumulating and retaining the residue for the benefit of the remaindermen, unless a contrary intention is evidenced from the will itself, read in the light of the surrounding circumstances. (*Frankel* v. *Farmers' Loan & Trust Co.*, 152 App. Div. 58; *Matter of James*, 146 N. Y. 78.)

In the " fifth " paragraph of the will, wherein the trusts for testator's children are set up, the trustee is directed " to hold so much thereof as may be realty and to invest so much thereof as may be personalty," and in the " eighth " paragraph, wherein the duties and powers of the executor and trustee are provided for, it is directed: " To hold and retain any and all securities and assets in the form and manner of investment as left by me, as investments for my estate,  *  *  *  and I hereby give to my said executor and trustee a like discretion and authority to sell said securities and assets or any part thereof, as well as any securities acquired in trust under this my last will and testament."

Reading these two paragraphs together, it is apparent that the testator intended that the leasehold forming part of the trusts be kept in the form in which it was at the time of his death and was not to be sold except if in the discretion of the executor and trustee it was advisable to do so. The claim of the objectants that inasmuch as the leasehold was the only property producing rents, and the testator used the word " rents " in his bequest to the executor and trustee to " apply the net ' rents,' interest and income to the use " of his said children, it was the intention of the testator that the rents be paid to the children in specie, cannot hold when read in the light of the other language of the will relative to the disposition of any real property " which I may own or be entitled to receive at the time of my death." The testator, though owning no real property at the time of making his will, doubtless had in mind, in using the word " rents " therein, the possible after-acquisition of real property. There can be gathered from the will no expression of intention that the rents from the leasehold are to be enjoyed by his children in specie. The leasehold was bequeathed in trust. The life beneficiaries are, therefore, not entitled to the net rents collected from said leasehold. The same should be accumulated for purposes of amortization. The life beneficiaries, however, should receive five per cent per annum (the average rate of interest paid on trust funds) on the fair appraised value of the leasehold at the time of testator's death (*Cairns* v. *Chaubert*, 9 Paige, 160), based upon the actual rent so far collected, it being conceded that the present appraised value of the leasehold is excessive.

Mabel Golding, testator's daughter, has been a resident of the State of Illinois since prior to the death of testator, and attained the age of eighteen years on January 28, 1922. The laws of that State provide that an infant attains her majority at the age of eighteen years. She is, therefore, competent to administer her own estate. The decree should provide that payment of her distributive share of the estate be made to her direct. (*Matter of Honeyman*, 117 Misc. 653; affd., 202 App. Div. 728; *Matter of Danvers*, N. Y. L. J. April 10, 1923.

Proceed accordingly.