In the Matter of the Judicial Settlement of the Account of Proceedings of BANK OF NEW YORK AND TRUST COMPANY, as Trustee of the Trusts Created under and by the Last Will and Testament of EMILE H. ROTH, Deceased, for MARCELLE ROTH STADELMANN and Remaindermen.

MACK ROTH and Others, Appellants; BANK OF NEW YORK AND TRUST COMPANY, as Trustee, etc., and Others, Respondents.

First Department, February 11, 1932.

*Jack Lewis Kraus, II*, of counsel [*Melvin S. Brotman* with him on the brief, attorney], for the appellants Mack Roth and others.

*Joseph M. Proskauer* of counsel [*J. Alvin Van Bergh* and *Charles Looker* with him on the brief; *Proskauer, Rose & Paskus*, attorneys], for the appellant Mortimer L. Hanover.

*Edward N. Bloomberg* of counsel [*Bloomberg & Bloomberg*, attorneys], for the appellants Lillie Stiner and others

*Henry DeLand Strack* of counsel [*White & Case*, attorneys], for the respondents Joseph Sinsheimer and Manfred M. Goldschmidt, as executors, etc., of Marcelle Roth Stadelmann, deceased, and another.

*Henry Escher* of counsel [*Francis L. Archer* with him on the brief; *Henry Escher*, attorney], for the respondent Ernest Philip Stadelmann.

MERRELL, J. This appeal is from a decree of a surrogate of New York county directing the distribution of the principal of a trust of $50,000 created by the 4th clause of the will of Emile H. Roth, deceased, and of the principal of the trust of one-half of the residuary estate of said testator provided for by the 9th clause of the testator's will. The surrogate held that one Marcelle Roth, a granddaughter of the testator and the sole surviving next of kin of the testator at his death, became vested with such remainders upon the testator's death.

The testator was a grandfather of Marcelle Roth. She was the only child of testator's son, Milton S. Roth, who died prior to the birth of his daughter. After the birth of Marcelle Roth she was taken into the family of the testator and there remained a member of his family for nineteen years, until the testator's death, which occurred August 6, 1919. This seems to have been with the acquiescence of the daughter-in-law of the testator, for whom the testator made provision in his will dependent upon the granddaughter being allowed to remain in the custody of testator's wife and of himself and of the survivor of them. Under the 4th clause of the testator's will he left in trust for the benefit of his granddaughter, Marcelle Roth, whom he described as the " daughter of my late dear son, Milton S.," until she should arrive at the age of twenty-one years, and thereafter during her lifetime, the rents, issues and profits of said trust fund. The 4th clause of testator's will further provided that the trustee should pay the principal sum of $50,000

to the lawful issue of his said granddaughter, should she die leaving lawful issue her surviving, to be divided equally among such issue, share and share alike. The 4th clause then further provides as follows: " Should the said Marcelle die without leaving lawful issue her surviving, then said principal sum of Fifty Thousand Dollars shall be divided between my next of kin me surviving, excluding my father, according to the laws of the State of New York governing the distribution of decedents' estates, as though I had died intestate."

The 9th clause of the testator's said will, with reference to the principal of one-half of the trust fund left for the benefit of his wife during life, upon her death was to be paid to the lawful issue of said Marcelle, should she die leaving lawful issue her surviving, in equal portions. Then followed practically the same provision as to the principal or corpus of the share of said residuary estate remaining in case of the death of Marcelle without leaving lawful issue as was provided in the 4th clause of said will — the language being substantially the same in both clauses.

The surrogate decided that under the terms of said will the only next of kin of the testator surviving him was the said Marcelle Roth, his granddaughter. It is the contention of appellants that, notwithstanding the plain and unambiguous language of the will, the same should be construed as excluding the said Marcelle Roth, and that the testator meant by said provision that the said principal of said trust should go to testator's next of kin who might be living after the death of his granddaughter, Marcelle Roth. The surrogate, in the decree appealed from, held that the testator used the words " next of kin " in their primary sense, intending to confine the class of remaindermen to those living at the date of his death, and that, in the absence of a clearly expressed intention to the contrary, the class described by the testator as his heirs and next of kin to whom the remainders should go was to be ascertained as of the time of his death. It seems to us that the surrogate was quite right in thus interpreting the will of the testator. Had it been the testator's intention that the remainders should go to his brothers and sisters, it would have been very easy for him to have provided in his will that the principal sums of said trusts should go to his next of kin who might be living after the death of his granddaughter, Marcelle. He did nothing of the sort. In unambiguous language he provided that should Marcelle die without issue her surviving, then the principal should be divided between his next of kin *him surviving*. His only next of kin surviving him was his grandaughter, Marcelle. This granddaughter was the testator's chief concern. In her veins alone flowed the blood of " my late dear son, Milton S." This grand-

daughter was taken into the testator's family upon her birth. She continued to occupy the position of a daughter of the testator, and was of the age of six years when the testator executed the will in question. She continued to live with the testator the remainder of his days, a period of nineteen years from her birth. Unless we are to make a new will for the testator at variance with his expressed desire that the principal of the trusts should go to his next of kin him surviving, then the surrogate was entirely correct in holding that the granddaughter, Marcelle, was the only person living at testator's death who was his next of kin. The testator not only provided that the said remainders should go to his next of kin surviving, but that they should be divided " according to the laws of the State of New York governing the distribution of decedents' estates, as though I had died intestate."

It is urged that there is some incongruity in the estate of a life beneficiary being the recipient of the corpus of a trust fund upon her death. Under the decisions of the court a life tenant of a trust having an interest in the principal of a remainder may still be the recipient of such remainder. ( *United States Trust Co.* v. *Taylor*, 193 App. Div. 153.) This was the effect of the decision of this court in that case written by Mr. Justice GREENBAUM and affirmed by the Court of Appeals in 232 New York, 609, upon Justice GREEN-BAUM's opinion. There can be no doubt that the law is well settled that under the language used by the testator in this case the testator meant that the principal of said trust funds should go to such of his next of kin as might be living at his death. In *Matter of White* (213 App. Div. 82) Justice McAvoy, voicing the unanimous opinion of this court, said (at p. 85): " The general rule of testamentary construction is, that in the absence of a clear distinction to the contrary, the class described by the testator as heirs and next of kin, to whom a remainder interest is given by the will, is to be ascertained as of the time of his death. This construction is not changed by the fact that a life estate may precede the bequest to the heirs at law or next of kin, nor by the circumstance that the bequest to such heirs or next of kin is contingent on an event that may or may not happen. There must be a clear intention manifested by the will to make a different disposition of the property where the bequest is to heirs at law and next of kin to take it out of the rule that heirs at law and next of kin so described will be determined as referring to those who are such at the time of testator's death."

Coming to the matter of intention of the testator, it seems to us he could never have intended that these remainders should go to any one other than to his granddaughter should she survive him.

In the will the testator made generous provision for his brothers and sisters, who are now appearing as appellants upon this appeal and are asking that the will be construed differently than in accordance with the testator's plainly expressed wish. There is, however, one exception, and that was that under the will the descendants of a deceased sister of the testator, Mathilde Strouse, were omitted and were not made beneficiaries of the testator's bounty. Some of these very descendants, children of the sister, Mathilde Strouse, are among the persons now appealing and claiming to share in the trust principal. It is the claim of the appellants that the fact that in the clauses of the will in question the testator excluded his own father indicated that he considered his father one of his next of kin. We do not think there is much significance to that fact. The testator's father was a very aged man, and in a prior clause of the will the testator had made ample provision for his comfort and support. If the granddaughter survived the testator his father would not be numbered among his next of kin, the granddaughter solely occupying that position. The testator may well have considered the possibility that the granddaughter might not survive him, in which case his aged father, for whom he had provided, would be one of his next of kin. Therefore, the testator excluded his father as one of the next of kin, which contingency could only arise in case of the death of the granddaughter before that of the testator. Not only did the testator provide that in case of the death of his granddaughter, Marcelle, without leaving lawful issue her surviving, that then the principal sum should be divided between the testator's next of kin him surviving, but he fortified that expressed wish that the division should be, in such event, " according to the laws of the State of New York governing the distribution of decedents' estates, as though I had died intestate." Suppose, in fact, the testator had died intestate, is there any doubt, in that event, his granddaughter, subject to the rights of his widow, would have inherited the entire estate? Testator knew that his granddaughter would be his sole next of kin if she survived him, and that in that event his father would not be one of that class. The construction for which the appellants contend would give the remainders to a class that had no existence at the time of testator's death. None of the appellants were numbered among his next of kin upon his death. They were not next of kin him surviving.

The language of this will is clear and unambiguous. The principal of the trust was to go to his next of kin, " me surviving." The words " me surviving " followed immediately after the words " her surviving," and seem to us to be of the utmost significance and must be taken in their ordinary and natural meaning as referring

to those surviving upon the death of the testator. The case of *Wadsworth* v. *Murray* (161 N. Y. 274) seems to us to be very close in principle to the case at bar. In that case a provision of the will of the testator for the benefit of his grandson was under consideration. It was provided that after the grandson's death the principal of the trust was to go to the latter's issue. The will then contained the following clause: "And in case the said Martin Brimmer, Jr., shall die, leaving no lawful issue him surviving, then, and in that case, the estate in said lands, and the entire and absolute estate and interest in such accumulations, shall descend to and vest in my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made, and the said Martin Brimmer, Jr., had died without issue before my decease." It was contended by one of the appellants in that case that the class of persons constituting the heirs of the testator were not ascertainable until after the death of the life tenant, rather than at the date of the death of the testator. The same argument is advanced in the case at bar. Under those circumstances the court was asked to construe the will of the testator. The Court of Appeals, however, held that no construction was necessary, and (at pp. 283 and 284) used the following language: " The appellant starts out with the proposition that, there being no specific intent expressed, the court must apply the settled rules of construction, and construe the will in accordance with the dictates of reason and justice, imputing to the language of testator such a meaning as, under all the circumstances, will conform to his probable intention.

" We are of opinion that no such situation is presented; the language of the will is clear and the meaning of the testator very obvious. When he states that if Martin Brimmer, Jr., dies without issue the property ' shall descend to and vest in my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made and the said Martin Brimmer, Jr., had died without issue before my decease,' there is no reason for misapprehending the precise meaning of the testator. If Martin Brimmer, Jr., had died before the testator in 1844, and the latter had made no will, it is clear that his only heirs at law in that situation would have been his two sons, James S. and William W., and his daughter, Elizabeth.

" When the testator employs language that is clear, definite and incapable of any other meaning than that which is conveyed by the words used, there is no reason for resorting to the rules of construction that are invoked in the case of ambiguous wills.

" The counsel for the respondents have cited many cases in England, in this State and other States which follow the well-

settled general rule that where, on the termination of a life estate, a remainder is limited to the heirs of the testator, the will is deemed to speak as of the time of his death, and his heirs at that time take a vested remainder.

" We are of opinion that there is no occasion to resort to this rule, and we place our decision on the intention of the testator, manifested by language that requires no construction."

The same position taken by the appellants in *Wadsworth* v. *Murray* (*supra*) is taken by the appellants here. The Court of Appeals held there, as the surrogate has here, that there was nothing to construe; that the language of the testator was clear and unambiguous, and that under such circumstances there was no requirement to construe the will differently than the plain language of the testator indicated. In this case the testator made a full and complete disposition of his property. Having done so, he apparently gave little thought to what should become of his property after the expiration of the life estates provided in the will. As was said in *Matter of Bump* (234 N. Y. 60): " We confess that this search for the meaning of the testator from indications such as we have adverted to is somewhat unsatisfactory. Very possibly it is an attempt to read into the testator's mind something of which he took no thought. While in the contingency which has occurred he did intend to dispose of the remainder of his estate, very possibly he had no fixed idea as to who his heirs should be. Very possibly all that he had in mind was to care for his wife, his daughter and her issue and his sisters. When that was once accomplished all was done that he desired to do. As to any remainder of his estate he had no particular design. Let it go as the law directs." In this case the testator clearly stated that he wished such remainder to go to his next of kin him surviving. This language he fortified by stating that it was to be divided according to the laws of the State of New York governing the distribution of decedents' estates as though he had died intestate.

We think the surrogate properly construed the will of the testator, and that the decree of the surrogate should be affirmed, with costs to the respondents against the appellants.

FINCH, P. J., McAVOY, MARTIN and SHERMAN, JJ., concur.

Decree so far as appealed from affirmed, with costs to the respondents against the appellants.