In the Matter of the Estate of ELEANOR L. HILLIARD, Deceased.

Surrogate's Court, Kings County, October 11, 1937.

*Mudge, Stern, Williams & Tucker* [*Barnabas B. Hadfield* of counsel], for John G. H. Boate, life beneficiary under paragraph 2 of the will.

*Affeld, Sowers & Herrick* [*Frank Sowers* of counsel], for Eleanor Swimm Hillyer, Charles T. Swimm, Phoebe M. Swimm, life beneficiaries under paragraph 2 of the will.

*Miles F. McDonald*, special guardian for Charles Ellison Hillyer, Kenneth Swimm Hillyer, Robert Clinton King, Martha Lavania King and John Gerald Hilliard Boate, Jr., infant remaindermen.

*Sproull, Harmer & Sproull*, for Franklin J. Myers and Barton V. Hilliard, as executors and trustees of the estate of Eleanor L. Hilliard, petitioners-accountants.

*James G. Moore*, for Barton V. Hilliard, as administrator *c. t. a., d. b. n.*, etc., of William V. Hilliard, deceased, creditor-claimant.

WINGATE, S. It is unfortunately an unusual experience for the court, in an important construction proceeding like the present, to be favored by a series of memoranda possessing the uniform excellence of those submitted herein. Not only is their discussion of the pertinent facts concise and pointed and their citation of authorities substantially exhaustive so far as the court has been able to ascertain by its independent research, but the consideration of the various factual and legal elements of importance has been couched in such dignified and non-controversial language as to render perusal a distinct pleasure.

The testatrix died in 1934 leaving a will which, so far as here material, erected seven separate trusts, the aggregate principals of which consisted of 124 shares of the common and 1,250 shares of the preferred stock of Underwriters Building Company. The common stock thus bequeathed constituted sixty-two and one-half per cent of all of the stocks of the company. As of the date of death, the common stock was appraised as worth $3,000 a share and the preferred $50, giving a total principal value of $434,500.

The sole assets of this corporation, other than current cash in bank, were and are the entire issue of stock of another corporation known as Four to Ten Dutch Street Corporation and a leasehold of the premises 51–57 John street and 2 Dutch street in the borough of Manhattan, improved with a sixteen-story and basement office building, which at the time of testatrix's death was subject to a mortgage of $213,000, the terms of which require periodic amortization, the amount remaining due on July 1, 1937, being $153,000.

The sole asset of the Four to Ten Dutch Street Corporation other than current cash is another similar leasehold of the premises in Manhattan indicated by its name, which is improved partly by a four-, and partly by a six-, story building and is subject to a mortgage which, at the date of death, amounted to $46,500, but has now been reduced to $40,500.

The amortization provisions of both mortgages will effect their payment in full by May 1, 1950.

Both sets of properties are subleased to Travelers Insurance Company for approximately the term of the present proprietary lease at a net annual rental of $90,000, plus varying sums for the Four to Ten Dutch street properties. The sublessee is under obligation to renew its leases for ten years or, at its option, purchase the properties and the underlying leasehold at a price to be fixed by arbitration.

It is obvious, therefore, that the ordinary income of the corporation, the stock of which comprises the sole asset of the trusts, is $90,000 plus the additional rentals received from the Four to Ten

Dutch street properties, and its ordinary disbursements are the $32,000 ground rent plus the interest and amortization on the mortgage. It is also apparent that, aside from the natural current depreciation on the buildings, which would affect their value even if the landlord should purchase them in 1950 or 1971, or the subtenant were to exercise its option in this regard in 1950, the stock of the company is also subject to depreciation due to the fact that if none of these possible purchases become actualities, the total value of the improvements and the sole assets of the corporations will be destroyed by 1992 in any event.

It has been and still is the practice of the corporations to pay out as dividends substantially all income not required for the two essential payments hereinbefore noted, and of the trustees of the trusts to pass these on to the life beneficiaries without any reservation for amortization of the allegedly decreasing value of the corpus of the trust. The primary issue in this proceeding concerns the propriety of this practice.

The protagonists of the opposing views concede the existence of the immemorially reiterated rules that under ordinary circumstances a life beneficiary is entitled only to the usufruct of the principal during the period of its dedication for his benefit with no right to encroachment upon any part of the corpus itself (*Matter of Albertson*, 113 N. Y. 434, 439; *Matter of Frost*, 184 App. Div. 702, 704; *Matter of Pelcyger*, 157 Misc. 913, 926, 927; *Matter of Olcott*, 161 id. 890, 900), while the gift to the remainderman is one of the entire corpus of the trust as originally created at the time appointed for the effectuation of his rights (*Matter of Densen*, 163 Misc. 232, 237). It is further agreed, for the purpose of this decision at least, that the failure of the trustees to set up a portion of the dividends currently received by them as a fund for the amortization of the leaseholds will potentially result in the payment to the life beneficiaries of a part of the value of the principal fund as it existed at the date of death.

The special guardian for infant remaindermen argues ably that this practice is improper and that such a fund should be established to protect his wards and assure them, when their possessory rights mature, of receipt of the equivalent in value of the principal at the date of testatrix's death. The life beneficiaries, on the other hand, insist that the terms of the will and the other pertinent factors in the case establish that both as a matter of the intent of this individual testatrix, and as a matter of law they are entitled to be paid the entire current return received by the trustees without any deduction for amortization of the allegedly depreciating principal.

Since any proceeding for testamentary construction involves merely an effort by the court to ascertain the intention of the particular decedent as disclosed in the testamentary script when this is read in the light of the disclosed situation of its author at the date of execution, and, when this is determined, to adjudicate its validity and effect in accordance with the applicable legal rules (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 91; *Central Trust Co.* v. *Egleston*, 185 id. 23, 33; *Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weil*, 151 Misc. 841, 844; affd., 245 App. Div. 822; *Matter of Dialogue*, 159 Misc. 18, 20), the first step toward an evaluation of the opposing positions is obviously an analysis of the terms of the will.

It consists of nine numbered items. The first is merely the ritualistic direction for the payment of debts, etc. The second creates the trusts in question and consists of one introductory and seven dispositive paragraphs. So far as essential for note, this reads:

" *Second.* My shares of stock in the Underwriters Building Company, I give and bequeath to my Executors and Trustees, hereinafter named upon the following trusts:

" Thirty-one (31) shares of the common stock and three hundred (300) shares of the preferred stock, I direct my executors and Trustees to set apart and hold, and the proceeds thereof, in case of sale, to invest, reinvest and keep invested, and to collect the rents, issues and profits thereof, and to pay over the net income therefrom after the payment of all charges and expenses of any kind of the said trust, to my nephew, Barton Villiers Hilliard, during his life, and upon his death leaving issue, to pay over the whole principal sum, with any accumulated income, to his issue in equal shares, *per stirpes* and not *per capita*, and if he shall die without leaving lawful issue, then to distribute the same among my residuary legatees as provided in the seventh paragraph of this my Will."

The second, third and fourth dispositive paragraphs of this item direct the erection of similar trusts of specified numbers of the same shares for named individuals in substantially identical language. The fifth and sixth paragraphs are the same with the exception that no conditional remainder to issue is given and the remainder is to be distributed to the residuary legatees under the will in a manner identical with that which is provided in the first paragraph in the event of the failure of issue. The seventh and final trust of the item is also couched in substantially identical language with the sole exception that the remainder, on the death of the life beneficiary, is payable to his daughter.

The third to sixth items of the will, inclusive, make a considerable number of outright bequests and provide for an annuity.

The seventh item constitutes the residuary clause, and since certain additional questions of devolution have been raised in respect thereto, must be considered in full. It reads:

" *Seventh.* All the rest, residue and remainder of my property, both real and personal, whatsoever or wheresoever the same may be, I give, devise and bequeath to my executors to divide among Barton Villiers Hilliard, Geraldine Swimm Krug, Eleanor Swimm Hillyer and Franklin J. Myers, in equal shares, share and share alike, the issue of any deceased legatee to take the parent's share *per stirpes* and not *per capita,* and if any of said residuary legatees shall die before me without issue, then I give, devise and bequeath the whole of my residuary estate to the surviving legatees or legatee, and the issue of such as may have predeceased me, so that any surviving legatee and the issue of any deceased legatee shall take equal shares, the issue of such deceased legatee to take in equal shares, *per stirpes* and not *per capita.*

The eighth item directed that tax payments be made from the body of the estate and the ninth appointed the fiduciaries and specified their powers, reading, in the latter respect: " giving and granting to my executors and Trustees and the survivor, full power to sell or lease any or all of the real and personal property of which I may die seized and possessed, and to that end to give good and sufficient deeds and other instruments therefor, and I further empower my executors and Trustees to hold or dispose of any of the bonds or other securities of which I may die possessed, and to use the same as part of the trusts herein created, using their discretion in the retaining and selling of the same, whether the said securities shall be such as are legal for trust purposes or not.

" I direct, however, that my Executors and Trustees shall not in any way vote the shares of Four to Ten Dutch Street or of the Underwriters Building Company for the purpose of acquiring other properties in the said companies, nor in any way use the same for the purpose of speculation or of any venture, and that in case of a sale of any of said stocks being made, it shall be made only for cash or cash and notes with said stock as collateral, and that all of the shares held by me in said companies shall be sold at the same time, except in case of the termination of any of the trusts herein created when said stocks may be sold or turned over in kind, and the proceeds invested only in proper securities for an investment by a trustee, and that in case the buildings and properties held by the said companies shall be sold, that they shall be sold only for cash or cash and a mortgage upon the said premises.

" In case of any stock dividends on my securities, I wish the same to be added to the principal of my estate, and that they shall not be considered as income, and in case any rights to subscribe to stock or other privilege in connection with any stocks, bonds or securities, which I may hold, I authorize my Executors and Trustees to use their discretion in subscribing for the same or selling the rights."

No evidence of the conditions surrounding the testatrix has been introduced, wherefore the decision must be predicated on the terms of the will and the facts hereinbefore stated.

Litigations respecting the relative rights of income and principal in receipts by trustees are no novelty in the experience of the courts and cover a wide range of diverse situations. Familiar among these are the questions of the allocation of stock or extraordinary dividends of corporations such as those reviewed in *Matter of Olcott* (161 Misc. 890, 897), respecting the relative rights in the proceeds on the sale of unproductive realty (See *Matter of Knox*, 163 Misc. 264), and those resulting from salvage operations of trust holdings in mortgages (See *Matter of Pelcyger*, 157 Misc. 913). In all of these the rule prevails that the life tenant or life beneficiary of a trust is ordinarily entitled only to the current use of the trust principal without any encroachment upon the ultimate value of the principal itself. This rule is, however, subject to invariable reversal if an active intent to the contrary on the part of the testator is discoverable. In all of these situations, however, certain legal principles have been formulated respecting an imputation of intent in the absence of direct expression on the subject, and the primary task in the present connection is to ascertain whether similar criteria of decision have been enunciated in respect to the matter under present consideration. In this process the court deems nineteen decisions of the courts of this State worthy of more or less passing review. These will be considered in their chronological order, it being the conclusion of the court that in this manner can best be demonstrated the development of a series of definite rules, one of which is decisive of the main controversy in the case at bar.

The first decision in this enumeration is that of *Bergen* v. *Valentine* (63 How. Pr. 221), decided in 1882. Here a trust having a principal of $100,000 was erected for the life benefit of the widow with remainder to testator's children. The will directed that the trustees should invest in described securities, which was accomplished at a premium. The court held (p. 227) that such premium should not be amortized out of income, basing its decision on the specific directions for investment, determining, in effect, that the

desire of the testator was that the widow should receive the entire current return from the specified $100,000 principal when invested in a directed manner in spite of the fact, if such investments were held to maturity that this would result in an encroachment on principal to the extent of $3,300. Whereas the result was thus attained on the basis of the testamentary intent, it was obviously merely an inferred wish based on the form of the gift and the particular directions respecting the manner of its investment.

The first pronouncement by the Court of Appeals on the general subject was made in *Matter of James* (146 N. Y. 78), which has at times been designated as a " leading case." This distinction appears of doubtful propriety since the determination involved merely a decision that under the extremely unusual facts demonstrated, which concerned the income from certain corporate shares which " were peculiar " and distinguishable from " corporations which are engaged in ordinary business enterprises and receive returns in the way of earnings upon the invested capital " (p. 96), the testamentary intent was " manifest " that the " personal estate shall remain in specie " (p. 97), and that the interest of the " legal heirs," who were the remaindermen, were " subordinated to the interest of his wife " (p. 98).

The terms of the will then under consideration bequeathed to the widow a legal life estate in one-half of testator's property with remainder to his " legal heirs," who were nephews, subject to a condition debarring them from any rights therein in the event that they made " any attempt directly or indirectly, in any manner or form, to interfere with or restrain in any manner my beloved wife from full enjoyment, use, management and direction and disposition of the property and income of my estate, as herein devised." The widow was appointed executrix without bond.

The decision placed emphasis on the fact that no trust was created and noted that " the question might have been a very different one, if the language of the will spoke of a trust, or indicated the notion of the testator that his wife, with respect to the management and use of the property, should be clothed with the duties of a trustee and guided by the strict rules to which trustees are subjected " (p. 98). The court further observed: " It is also significant that the direction to sell is only in the event of a sale becoming necessary to discharge debts " (p. 99).

The decision is merely an adjudication that the testamentary intent is paramount, and, if a wish to that effect is determined to exist, will permit enjoyment by a life tenant of that which ordinarily would be a portion of the remainder gift. No generally applicable principle is, however, enunciated as a guide in the general determination of the existence of such intent.

The next decision in order is *McLouth* v. *Hunt* (154 N. Y. 179), decided in 1897. This case is not so important by reason of its actual holding as in consequence of the position for which it has subsequently been cited. The pertinent facts were that the residuary clause of the will bequeathed the balance of the estate in three equal parts in trust to pay the " full " income to certain named beneficiaries until each attained the age of thirty-five, when the principal was payable to them respectively. In the event of their predecease of that age, the remainder was payable to their descendants or the survivors. By a previous decree, the executors had been directed to set aside as principal of the trusts certain securities formerly owned by the decedent which were then valued at a premium. The question was as to whether such premium should be amortized from income.

The court expressly disclaimed any intention of enunciating any general rule, saying (at p. 189): " The questions are not to be determined by any arbitrary rule, but by ascertaining, when that can be done, the meaning and intention of the testatrix, to be derived from the language employed in the creation of the trust, from the relations of the parties to each other, their condition and all the surrounding facts and circumstances of the case."

The actual decision (p. 192) was that " the intention of the testatrix as expressed in the will " was that no amortization should be deducted from income. In arriving at this result stress was laid on three facts of the case, namely (1) that all but $5,000 of the securities in question were owned by the testatrix; (2) that she directed that the life tenants should receive the " full income;" and (3) that the trustees received the bonds at the direction of the surrogate, " a direction which they were not at liberty to disobey any more than if the testatrix herself had specifically designated them as a part of the trust fund " (p. 190).

In spite of the obvious absence of any such determination therein, and in the face of a limiting reference to the applicability of the case, made in *Matter of Hoyt* (160 N. Y. 607), this decision was subsequently made the basis of a general rule which will be noted in a consideration of *Matter of Stevens* (187 N. Y. 471), that " if the bonds are received from the estate of the testator  *  *  * the whole interest should be treated as income."

The next expression by the Court of Appeals on the general subject is found in *Matter of Hoyt* (160 N. Y. 607), decided in 1899, two years after the *McLouth* decision. In the will therein considered the testator directed the erection of a trust in a specified sum, the income to be used to provide for his daughter " in the

most bounteous and liberal manner." The remainder was given to nephews and nieces. The trustees were authorized to hold any securities owned by the testator but on reinvestment were restricted to legally authorized investments. The trustees did not retain any securities owned by the testator but invested largely in bonds which they purchased at a considerable premium. The question was whether such premiums (which aggregated $245,000, or almost twenty per cent of the total principal) should be amortized from income.

The court held that the intention of the testator as discernible from the terms of the will was that the daughter should receive the entire income, adding (at p. 617): " As we have before pointed out, the decision in the *McLouth Case* (154 N. Y. 179) rested wholly upon the intention of the testator as derived from the face of the will and the surrounding circumstances."

Two years later, in 1901, the court, in *New York Life Insurance & Trust Co.* v. *Baker* (165 N. Y. 484), again based its decision solely on the particular factual demonstration of the case which disclosed merely a trust in usual language erected for the life of testator's son with remainder to his children or issue, with a power of sale granted to the trustee. The holding required the substituted trustee, who had received certain bonds purchased by his predecessor at a premium, to amortize such premium out of current income, observing (at p. 490) that there was nothing in the will or the surrounding circumstances to indicate " that the testator intended any different treatment of the trust than that which the language of the clause creating it plainly indicates, viz., that the capital of the trust should be kept intact, and that to that end an adequate proportion of the annual income should be set apart to make good the amount paid in premiums in order to secure a proper investment."

The first indication of the emergence of any rule of imputed intention is found in *Matter of Chapman* (32 Misc. 187), decided in 1900 by Surrogate HERRIMAN of St. Lawrence county, and affirmed by the Court of Appeals without opinion in 1901 (167 N. Y. 619), a few months after the decision in *N. Y. Life Ins. & Trust Co.* v. *Baker.* In that case the will erected a trust for the benefit of the widow with remainder to testator's children, and authorized the executors to continue the testator's investment in a certain steamer. They did so, and the question adjudicated was whether they should preserve a portion of the income for amortization of the investment in the boat. The decision was in the negative, and was apparently based on the imputation of an intent by reason of the specific inclusion of the steamer in the

assets of the trust, that the testator desired that the life beneficiary should receive the entire current income from this asset. *Mc Louth* v. *Hunt* was relied on as sustaining this result.

Whereas, of course, this affirmance without opinion of itself indicated no more than that the ultimate reviewing tribunal approved the result attained in the particular case, and not that it subscribed to the reasoning upon which it was based (*Rogers* v. *Decker*, 131 N. Y. 490, 493; *Matter of Clark*, 275 id. 1, 4; *People ex rel. Palmer* v. *Travis*, 223 id. 150, 156; *Scott & Co.* v. *Scott*, 186 App. Div. 518, 526; *Matter of Brush*, 154 Misc. 480, 483; *Matter of Avchin*, 158 id. 388, 391; *Mattter of Zaiac*, 162 id. 642, 655), yet, in view of the next succeeding pronouncement of the Court of Appeals on the subject, the result in this case would seem to assume an added significance.

The next decision for consideration, *Matter of Stevens* (187 N. Y. 471), made in 1907, is pre-eminently the most important contribution to the law on the subject to be found in the reports of the State. That through its medium the ultimate appellate tribunal undertook to establish certain definite rules for general use in testamentary interpretation in this connection is obvious from the observation of Chief Judge CULLEN in the prevailing opinion after statement of the rules that it enunciated (p. 477): " These rules may not work perfect justice in all cases, and we fully appreciate that there may be inconsistencies between them, but it is far better that they *should be uniformly adhered to*, even at the expense of a particular case, than that the administration of estates should be subjected to constant litigation and disputes." (Italics not in original.)

This intention to establish a uniform basis of decision is further accentuated by the extended dissenting opinion, which objects to " the laying down of such a hard and fast rule " (p. 478).

In view of the fact, which is obvious from the entire tenor of the opinion, that the ultimate judicial authority of the State undertook in this pronouncement to enunciate a series of rules to govern future action and decision in cases of this type, the particular facts of the case assume a minor significance since any practitioner or court of inferior jurisdiction who would undertake to act counter to them, whether they are to be deemed decisions or dicta, would indeed be a person of extreme temerity.

The rules thus formulated are as follows (at p. 476): " While we admit, in accordance with the decision in *Matter of Hoyt*, that the terms of the will may be such as to take a case without the general rule that the principal of the fund must be preserved intact, we think that to justify such an exception to the rule the intent should be expressed in the very clearest manner."

At page 477 it is further said: " We, therefore, adhere to the rule declared in the *Baker* case, that in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, then the rule in the *McLouth* case prevails, and the whole interest should be treated as income."

The result of the case itself was to require amortization from current income of premiums on securities purchased by the trustees themselves. The second portion of the rule exonerating them from such obligation when the wasting securities were received from the estate itself was applied by the court less than two months later in *Robertson* v. *de Brulatour* (188 N. Y. 301), in which the will bequeathed specified securities to the trustees, the court there saying (at p. 315): " So, also, was the question correctly decided, which the remaindermen raised as to the obligation upon the trustees to maintain a sinking fund, with which to make good any depreciation in the value of the securities by the falling off in the premiums. This rule has no application where the securities have been specifically bequeathed. It, only, applies, in ordinary cases and where the will affords no aid upon the subject of the testator's intention, when trustees have, themselves, made investments from the trust funds, in the purchase of securities at a premium ( *N. Y. Life Ins. & Trust Co.* v. *Baker*, 165 N. Y. 484, affirming the decision in 38 App. Div. 417)."

To digress momentarily from the chronological consideration of adjudications, the language of the Appellate Division for the First Department in *Matter of Guaranty Trust Company* (131 App. Div. 658), commenting upon the effect of the *Stevens* case, is of interest. It was said (at p. 660):

" In *Matter of Stevens* (187 N. Y. 471) the Court of Appeals, in considering all the prior cases, laid down the rule that, in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, the whole interest should be treated as income.  *  *  *

" This definite rule was made by the Court of Appeals on an examination of all the cases, and by a divided court, with a strong dissent, showing that the matter had been advisedly passed upon as a guide to future trustees. As these bonds were bought by the trustee, we are bound by the decision cited."

The second portion of the rule of *Matter of Stevens* as applied in *Robertson* v. *de Brulatour* was followed by Surrogate KETCHAM in *Matter of Fanoni* (88 Misc. 442) in a situation in which the will gave the sum of $300,000 in trust to pay the income to testator's daughter for life and authorized the fiduciaries to utilize securities owned by the decedent for the purpose, which they did. Certain of these were at a premium when taken over, and the question was whether a fund should be set up to amortize such premium or whether the life tenant was entitled to receive the entire net income. The negative determination was carried to the Court of Appeals, which unanimously affirmed, without opinion (216 N. Y. 640). This was in 1915.

The same course, on similar facts and like authority, was adopted in *Matter of Hunt* (121 App. Div. 96, 104).

In *Frankel* v. *Farmers' Loan & Trust Co.* (152 App. Div. 58; affd., 209 N. Y. 553) the court applied that portion of the *Stevens* rules appearing on page 476 determining that directions for the payment of the " *whole* of the net income " to the wife, who was the life beneficiary, and an expression of intention " to impose the loss of premium upon investments or securities upon those who shall share in the final distribution of my estate or upon remaindermen, and not upon the beneficiary of the said trust herein set forth or· the *cestui que trustent*, and that my trustees shall not reserve any portion of the income to make good against the wearing away of premium or the amount paid for premium, nor shall there be any amortization" were, in view of the situation of the testator and his relations with the life beneficiary, sufficient to authorize abrogation of the usual rule requiring amortization.

The last reported reference by the Court of Appeals to the rules of *Matter of Stevens* which this court has found was in 1921, and is contained in *Furniss* v. *Cruikshank* (230 N. Y. 495, 511). The Appellate Division (191 App. Div. 450, 459) quoted and followed them. The Court of Appeals, in affirming as to this point, said: " As to the question of amortization, the Appellate Division is so clearly right that no discussion is required. (*Matter of Stevens,* 187 N. Y. 471; *N. Y. Life Ins. & Trust Co.* v. *Baker,* 165 N. Y. 484.) "

Since that date six decisions have dealt with the general subject, two (*Matter of Enz,* 204 App. Div. 634; affd., 237 N. Y. 577; *Matter of Elsner,* 210 App. Div. 575) by Appellate Divisions; three (*Matter of Golding,* 127 Misc. 821; *Matter of Hall,* Id. 238; *Matter of Murphy,* 138 id. 655) by former Surrogate O'BRIEN of New York county, and one (*Matter of Jackson,* 258 N. Y. 281) by the Court of Appeals. In none of these was any reference made to *Matter*

*of Stevens,* although the results of all, so far as ascertainable from the opinions, were consonant therewith except that in *Matter of Golding.* The omission in the opinions of the surrogate and the Appellate Division is without any especial significance, and the same applies to the result in the Court of Appeals when it is recalled that the subject had not been actively considered in that tribunal for over a quarter of a century, and that it was not cited on any of the briefs before the court. Even the learned judges of this ultimate tribunal can scarcely be expected to recollect all of the important pronouncements of their predecessors, wherefore the omission in this instance is not construable as an intent to overrule these established principles *sub silentio.*

This court accordingly concurs in the sentiment expressed in *Matter of Guaranty Trust Company* and *Matter of Fanoni* that unless and until some diverse determination is made by the court of last resort, it is bound by the rules of *Matter of Stevens,* with the results:

1. That where the will makes a specific gift of property either to a life tenant direct or to trustees for his benefit, the life beneficiary is entitled to receive its entire current income in spite of the fact that this may result in an impairment of the value of the principal as it existed at the date of death.

2. Where the subject-matter of the legal or equitable life estate was not given directly by the terms of the will, and the award of current income to the life beneficiary would result in an impairment of principal, an amortization fund must be set up from income to keep the principal intact unless the testator has expressed a contrary intent " in the very clearest manner."

The court is unable to concur with the position of the special guardian that the rules of *Matter of Stevens* and *Robertson* v. *de Brulatour* do not apply to the situation in the case at bar. His argument is that in the cases involving a premium on purchase of securities only a small impairment of principal was involved whereas in the instant case it is potentially great. To the court this argument is reminiscent of the plea of the character in chapter three of Marryat's " Mr. Midshipman Easy " in mitigation of the fact that she was an unwed mother, that the child was " a very little one."

Normally, remaindermen are entitled to security from any invasion, however slight, of the value of their gift for the benefit of the life tenant. This rule may be varied only where a diverse testamentary intent, either actual or imputed, is demonstrable. When demonstrated to exist, however, the barrier is down and the extent of potential impairment cannot affect the affirmatively demonstrated intention. Since the manner of gift in the case at

bar was of specified securities forming a part of the testatrix's estate, the intent must be imputed to her that the life beneficiaries were to receive all of the current income received thereon without diminution for the purpose of establishing an amortization fund and that the course of conduct hitherto pursued by the trustees was correct.

A secondary question has been propounded in the proceeding respecting the manner of devolution effected by the remainder directions of the trusts erected by item second of the will both when taken alone and when read in conjunction with item seventh. The learned special guardian has submitted a thoughtful and painstaking analysis with which none of the other parties disagree but with which the court is unable to concur in full. The pertinent portions of the text of the will have already been quoted.

In this and many similar cases, it is the opinion of the court that clarity of conception is promoted by considering the nature of a gift in trust. As has frequently been observed (*Matter of Densen*, 163 Misc. 232, 236; *Matter of Shupack*, 158 id. 873, 877, and authorities cited), as to any particular item of property, a testator may make different varieties of gifts. He may give it outright, in its entirety, to one or more persons, or he may divide his gift as to any particular item by donating the beneficial enjoyment thereof to one individual or set of individuals for a period of time not exceeding the continuance of two lives in being at the effective date of the instrument, and give the ultimate possessory enjoyment to still others. When this latter possibility is adopted, both gifts, namely, those of the use for the period and the ultimate possessory right upon the completion of the time of withholding, take effect at once.

It is the theory of the law that all valuable property must belong to some one and that devolution of the assets of a decedent to those entitled thereto takes place immediately on death without any intervening hiatus of ownership (*Matter of Killough*, 148 Misc. 73, 86) even though the ascertainment of the identity of such owner may at times be fraught with difficulty or even be presently impossible of absolute determination. (*Matter of Shupack*, 158 Misc. 873, 877.) It follows, therefore, that when a division of gift is made as in the erection of a trust, the life user becomes vested at once with his right to use and the ultimate presumptive taker according to then existing facts immediately becomes possessed of at least the potential right to receive the deferred enjoyment of the asset which has been accorded to him.

At the moment of the death of the testator such ultimate presumptive taker, employing the term " presumptive " in the con-

notation in which it is used in *Matter of Shupack* (158 Misc. 873, at pp. 890 *et seq.*), as the person who would be entitled to receive the remainder in possession if the primary life estate were to terminate immediately without alteration of any other pertinent condition, may be either a person named or described in the will, or may be one designated in the Statute of Distribution by reason of a testamentary failure of adequate direction. To take an extreme case, suppose a gift to A for life with remainder to his issue and at the date of the testator's death A has no issue. If there were no further direction in the will respecting what should be done with such remainder if A should die without issue, then, upon the happening of such an event, the remainder would be payable to the statutory distributees of the testator as intestate, or undirected property. It follows, therefore, that upon the facts supposed, there is a conditional vesting of the remainder in the statutory distributees of the testator which is subject to divestment upon the birth of issue to A.

Of course, if an alternate direction had been made by the testator to cover the particular contingency, it would supersede the presumed intent (*Matter of Weissman*, 137 Misc. 113, 116; affd., on opinion of this court, 232 App. Div. 698; *Matter of Williams*, 162 Misc. 507, 509), embodied in the statutory direction and the alternate donees named in the will or the existing individuals in the described class of such would be substituted as the presumptive takers in place of those supplied by the statute in the absence of such direction. This general question has been made the subject of such frequent analysis and adjudication (See *Moore* v. *Littel*, 41 N. Y. 66, 74, *et seq.; Matter of Turner*, 210 App. Div. 221, 222; *Matter of Allison*, 53 Misc. 222, 232, affd., 122 App. Div. 898; affd., 194 N. Y. 540; *Hennessy* v. *Patterson*, 85 id. 91, 101, 103; *Matter of Woodruff*, 135 Misc. 203, 206–208; *Matter of Towland*, 139 id. 335, 337; *Matter of Hoole*, 156 id. 821, 822) that further statement of the basic principles appears superfluous.

Adverting now to the testamentary directions respecting the first trust under the second item. The gift of the use of the fund for the permissible period of one life in being is given to Barton Villiers Hilliard. What is done with the other disposable portion of testatrix's ownership in the balance of the *res* of which disposition is possible by the testatrix? Provision is made for two alternate contingencies namely, (1) if the life beneficiary dies leaving issue, it is to go to them; (2) if none survive him, it is to fall into the residue of the estate and be distributed as therein directed. Even had the will made no express direction in this regard, the latter result must have been the same since by the residuary direction

the testatrix purported to make disposition of all of her property for which no previous direction had been inserted in the will and the balance of the permissible gift of the assets constituting this trust, namely, the ultimate possessory enjoyment after the life use, would be within this description.

As of the date of testatrix's death, since Barton Villiers Hilliard had no issue and there is no presumption that such existing condition will change in the future, the second alternative gift becomes presumptively effective and the provisions of the residuary clause must be searched to ascertain the identity of the individual or individuals presumptively entitled to receive the remainder. These are Barton Villiers Hilliard, Geraldine Swimm King, Eleanor Swimm Hillyer and Franklin J. Meyers. All were living at the time of testatrix's death and consequently each received a contingently vested proportionate interest in the remainder of the first trust which interests were subject to defeat by the occurrence of the condition subsequent, that Barton Villiers Hilliard should have issue and that such issue should survive him.

Barton Villiers Hilliard received in this connection the same *pro rata* right as the other named residuary legatees in spite of the fact that he was life beneficiary of the trust, because the gift of the life estate to him was of an essentially different thing than a gift of a portion of the remainder and it has been frequently determined that there is nothing incongruous in bequests of different parts of the same fund to a single individual. (*Matter of Watson*, 262 N. Y. 284, 299; *Doane* v. *Mercantile Trust Co.*, 160 id. 494, 500; *Matter of Roth*, 234 App. Div. 474, 477; *United States Trust Co.* v. *Taylor*, 193 id. 153, 156; affd., 232 N. Y. 609; *Matter of Foster*, 133 Misc. 222, 224; affd., 227 App. Div. 668; *Matter of Leonard*, 143 Misc. 172, 184; *Matter of Meyer*, 162 id. 426, 427.)

The final question in this connection is as to whether these *pro rata* interests in the remainder of the Barton Hilliard and other trusts, the remainders of which are given absolutely or contingently to the residuary legatees, are subject to defeat through the happening of any other contingency than the one last noted. In the consideration of this question the sixth trust erected by the second item will be taken as an example, although the general principles applicable thereto in this connection are identical with those governing all except the seventh.

The life beneficiaries of the sixth trust are Charles T. Swimm and his wife, Phoebe, and their survivor. The remainder on their death is given without qualification to the residuary legatees under the seventh item. The question for determination is whether the four named residuary legatees received absolutely vested

interests in the remainder as of the date of death of the testatrix or whether they were only contingently vested and subject to defeasance in the event of their predecease of the life beneficiaries or, to use the popular expression, whether they must " live to win."

In favor of the latter interpretation may be urged the language of the seventh item which purports to bequeath the remainder to the executors " to divide " among the named residuary legatees. Whereas the use of such language has, on occasion, been interpreted as demonstrating an intention to attach futurity to the substance of the gift (*Matter of Hopnor*, 148 Misc. 748, 750; affd., on opinion of this court, 242 App. Div. 652; *Matter of Leonard*, 143 Misc. 172, 178; *Matter of Denniston*, 157 id. 80, 82), this is merely a canon of construction upon which the courts sometimes seize as an ultimate resort when the language of the will leaves the intended disposition in doubt (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573, 583; *Matter of Beckmann*, 158 Misc. 706, 709; *Matter of Green*, 160 id. 490, 493), and has been said to be " more honored in the breach than in the observance." (CULLEN, Ch. J. in *Dickerson* v. *Sheehy*, 209 N. Y. 592.) In any event it has uniformly been determined inoperative in the face of a gift nominatim as here made. (*Matter of Gardner*, 140 N. Y. 122, 129; *Matter of Young*, 145 id. 535, 537, 538; *Matter of Traver*, 161 id. 54, 57; *Roosa* v. *Harrington*, 171 id. 341, 353; *McLean* v. *McLean*, 207 id. 365, 375; *Carr* v. *Smith*, 25 App. Div. 214, 216; affd., 161 N. Y. 636; *Matter of Lamb*, 182 App. Div. 180, 186; affd., 224 N. Y. 577; *Matter of Soy*, 143 Misc. 217, 221; *Matter of Meyer*, 162 id. 426, 428; *Matter of Green*, 160 id. 490, 494.)

It follows, therefore, that the gift to these four residuary legatees, who survived the testatrix, vested on her death. The remaining question is as to whether, as contended by the special guardian, the testatrix herself has provided for a defeasance in the event that any of the named residuary legatees predecease the falling in of a particular remainder interest. The words upon which reliance is placed for this result follow immediately after the express gift to the named persons. For convenience in analysis the text will be divided into two parts. It then reads that the gift is made to such individuals, (1) " the issue of any deceased legatee to take the parent's share, *per stirpes* and not *per capita;* " (2) " and if any of said residuary legatees shall die before me without issue, then I give, devise and bequeath the whole of my residuary estate (a) to the surviving legatee or legatees, and (b) the issue of such as may have predeceased me. So that any surviving legatee and the issue of any deceased legatee shall take equal shares, the issue of such deceased legatee to take in equal shares, *per stirpes* and not *per capita*."

In the opinion of the court the argument of the special guardian (in which the other parties concur) in support of a future possible defeasance of the interests which vested on the death of the testatrix is fallacious for three reasons: *First*, the testatrix obviously made a gift of the residue of her estate, *i. e.*, the property of which she had previously made no disposition, as a composite unit. It was primarily given as such unit to these four identified persons. Though portions thereof could not come into possessory enjoyment of the donees until some future time, it was all capable of immediate present gift and the words employed were apt for that purpose. If the subsequent words, just quoted, are capable of interpretation as limiting or impairing such absolute gift — and to the court they are not — they are at best ambiguous, and it is primary that a clear testamentary direction may not be circumscribed by a subsequent provision possessing inferior clarity. (*Matter of Rooker*, 248 N. Y. 361, 364; *Tillman* v. *Ogren*, 227 id. 495, 505; *Roseboom* v. *Roseboom*, 81 id. 356, 359; *Matter of Rossiter*, 134 Misc. 837, 841; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Stulman*, 146 Misc. 861, 877; *Matter of Burroughs*, 155 id. 237, 240; *Matter of Van Brunt*, 159 id. 105, 108; *Matter of Friedman*, 160 id. 494, 495; *Matter of Olcott*, 161 id. 890, 893.)

*Second*, the use of the word " deceased " in that portion of the substitutionary gift designated " (1)," in the absence of the indication of a contrary intent, not here present, is invariably interpreted to mean " deceased " at the time of death of the testator. (*Nelson* v. *Russell*, 135 N. Y. 137, 141; *Runyon* v. *Grubb*, 119 App. Div. 17, 19; *Matter of Moores*, 155 Misc. 471, 473, 474; affd., 248 App. Div. 738; *Matter of Duffy*, 143 Misc. 421, 422; *Matter of Guenard*, 149 id. 182, 183; *Matter of Perlmutter*, 156 id. 571, 574; *Matter of Beckmann*, 158 id. 706, 710.)

*Third*, irrespective of any applicable canons of construction, the conclusion appears inescapable to the court that the alternate dispositions in the entire substitutionary gift were designed to be effective only if any of the named residuary legatees predeceased the testatrix. If such eventuality occurred, two conceivable conditions might exist, namely, that such decedent might have left issue, in which event the clause which has hereinbefore been designated " (1) " would become operative; or such decedent might have left no issue, when " (2) " was to control the devolution. All of the named legatees survived the testatrix, wherefore all portions of the seventh item following the gift to them have become surplusage and of no further concern whatsoever.

The concrete application of the foregoing principles is as follows: As to the first, second, third and fourth trusts erected by item

second the remainders will be payable to the issue of the respective life beneficiaries, if there be any at the time of their respective deaths, any remainders not thus devolving being payable to the four named residuary legatees or to the estates of any who have died; as to the fifth and sixth trusts, the remainders are payable to the four residuary legatees or their estates. The remainder of the seventh trust is payable to the daughter of the life tenant if she survives him. The identity of this "daughter," whether her remainder interest is subject to defeasance and if so, whether a gift over to her "heirs" is effectively made, are questions which have not been briefed or argued and are presently academic. They are consequently not determined.

Enter decree on notice in conformity herewith.